UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JENNIFER L. MARSHALL,

 Plaintiff,

  v.

I-FLOW, LLC,

 Defendant.

Civil Action No.  12-82 (JEB)

### MEMORANDUM OPINION

  Plaintiff Jennifer L. Marshall underwent shoulder surgery in upstate New York in 2006, following which a "pain pump" manufactured by Defendant I-Flow was inserted into her shoulder joint.  She alleges that this caused significant cartilage damage, leading her to file this suit.  Defendant, a Delaware corporation headquartered in California, now moves to dismiss the case for lack of personal jurisdiction; in the alternative, it asserts that venue in the District of Columbia is improper.  Although the Court finds personal jurisdiction does exist, it will transfer the case to the more appropriate venue of the Northern District of New York.

**I.** **Background**

  According to the Complaint, which must be presumed true at this juncture, Plaintiff lives in Ithaca, New York.  Compl., ¶ 18.  Her shoulder surgery took place on July 6, 2006, in Syracuse.  Id., ¶ 21.  The surgery was followed by insertion of an I-Flow pain pump, which continuously infused her joint with pain medication.  Id.  After her shoulder worsened and more conservative treatment was unsuccessful, she underwent another surgery in Rochester in 2011.  Id., ¶¶ 23-25.  Other treatment after this second surgery also occurred in New York.  Id., ¶¶ 26-

1

29.  Her latest consultation has resulted in the recommendation of a "total shoulder replacement should her symptoms continue." Id., ¶ 29.

She brings this suit against I-Flow, asserting causes of action for negligence, negligence *per se*, negligent misrepresentation, fraud, strict product liability, failure to warn, and breach of implied warranty.  Defendant has now asked the Court to dismiss the case or transfer it to the Northern District of New York.

**II.    Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2), Plaintiff bears the burden of "establishing a factual basis for the [Court's] exercise of personal jurisdiction over the defendant." Crane v. New York Zoological Society, 894 F.2d 454, 456 (D.C. Cir. 1990) (citing Reuber v. United States, 750 F.2d 1039, 1052 (D.C. Cir. 1984), overruled on other grounds, Kauffman v. Anglo-American School of Sofia, 28 F.3d 1223 (D.C. Cir. 1994)).  To meet this burden, Plaintiff "must allege specific facts connecting the defendant with the forum." Capital Bank Int'l Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 74 (D.D.C. 2003) (citing Second Amendment Foundation v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001)).

In determining whether a basis for personal jurisdiction exists, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." Crane, 894 F.2d at 456 (citing Reuber, 750 F.2d at 1052).  Unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Similarly, when presented with a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and

resolves any factual conflicts in the plaintiff's favor." James v. Verizon Servs. Corp., 639 F. Supp. 2d 9, 11 (D.D.C. 2009). "To prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue." Khalil v. L-3 Commc'ns Titan Grp., 656 F. Supp. 2d 134, 135 (D.D.C. 2009).

**III.   Analysis**

Defendant argues that the case should be dismissed both because the Court lacks personal jurisdiction over it and because venue here is improper. The Court will address each in turn.

A. Personal Jurisdiction

There are two types of personal jurisdiction that Plaintiff argues apply here: specific and general. See Opp. at 7-9. The District of Columbia's long-arm statute, D.C. Code § 13-423(a), articulates the bases for asserting specific jurisdiction over non-residents. See Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C. Cir. 2002). Plaintiff here relies on § 423(a)(1), which permits the court's exercise of personal jurisdiction over a person "transacting any business in the District of Columbia." That section, however, is limited by § 423(b), which states: "When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." In other words, Plaintiff's claim must arise from Defendant's transacting of business here. See World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1168 (D.C. Cir. 2002) ("personal jurisdiction under this theory is limited to claims arising from the particular transaction of business in the District") (citations and internal quotation marks omitted). Plaintiff's allegations make manifest that such is not the case here.

Neither of the surgeries nor any subsequent treatment of Plaintiff took place in the District. All relevant acts occurred in New York. Plaintiff nonetheless alleges Defendant used

prominent Washington hospitals and doctors to endorse its products, hosted dinners here to promote its products, and marketed and advertised its products here.  Compl., ¶ 16.  In addition, it profited from sales of pain pumps to D.C. hospitals, obtained medical consulting services of D.C. hospitals and doctors, and has established a partnership with George Washington University Hospital.  Id., ¶ 19.  Even if all of this is true, Plaintiff does not explain what connection these activities have to her claim here.   The best Plaintiff can muster is the statement that "I-Flow misled both the medical community and the public at large, including Ms. Marshall and her orthopedic surgeon, by making false representations about the safety and proper use of its products."  Opp. at 3 (citing Compl., ¶¶ 31-79, 91(k)).  Yet this conclusory statement is far from sufficient to establish that Defendant's acts in the District caused Plaintiff's injuries.  See Gorman, 293 F.3d at 509 ("because Gorman's breach of contract claim against Ameritrade does not arise out of any business transacted between the parties in the District, this font of jurisdiction is unavailable").

     This does not end the inquiry because, in addition to specific jurisdiction, "District of Columbia law also permits courts to exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is 'doing business' in the District."  Id. (citing, *inter alia*, D.C. Code § 13-334(a)).  The Due Process Clause prohibits such general jurisdiction to exceed "the reach of constitutional due process."  Id. at 510 (citation omitted).  As a result, Defendant's "business contacts with the forum district [must be] continuous and systematic" in order for general jurisdiction to lie.  Id. at 509-10 (citations and internal quotation marks omitted); see also Hughes v. A.H. Robins Co., 490 A.2d 1140, 1148 (D.C. 1985) ((("[W]e may find jurisdiction if [the defendant] ... has been carrying on

4

in [the District] a continuous and systematic, but limited, part of its general business.") (citations and internal quotation marks omitted).

Plaintiff alleges that Defendant "has established and benefits from a partnership with the George Washington University Hospital," "devotes an entire [sales] region to sales in Washington, D.C.," "profits from sales of its pain pumps to every major Washington, D.C. Hospital," and has obtained "expert medical consulting services of prominent Washington, D.C. medical facilities and physicians." Compl., ¶ 19. At this stage of the proceedings, these allegations suffice to establish a continuous and systematic, even if limited, part of Defendant's general business. The Court, accordingly, will not dismiss the case for lack of personal jurisdiction.

The Court should note that this ruling does not bar Defendant from subsequently arguing – based on evidence developed in the record, rather than only what is alleged in the Complaint – that its contacts with this forum are not sufficient to confer general jurisdiction.

B.  Venue

Defendant also contends that dismissal for lack of proper venue or, alternatively, a transfer to the Northern District of New York is appropriate here. Under 28 U.S.C. § 1391(a), venue in a diversity case such as this one generally will lie only in a district where (1) the defendant resides, (2) a substantial part of the events giving rise to the claim occurred, or (3) if there is no other district where suit may be brought, where the defendant is subject to personal jurisdiction. Section 1391(c) provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." As the Court has found personal jurisdiction to exist, venue is also proper here under § 1391(a)(1).

Just because a case is properly venued here does not mean that it must remain here. Defendant seeks transfer to NDNY under § 1406(a), which states: "The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interests of justice, transfer such case to any district . . . in which it could have been brought." Since venue is proper here, this section does not apply. Section 1404(a), however, does. That statute states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."

There can be little doubt that NDNY is a more convenient forum than the District of Columbia. See, e.g., Trout Unlimited v. U.S. Dept. of Agriculture, 944 F. Supp. 13, 16 (D.D.C. 1996) (setting out factors such as parties' choice of forum, where claim arose, convenience of parties, convenience of witnesses, ease of access to sources of proof). First, Plaintiff herself lives there. Second, all of her fact witnesses, including the doctors who performed her surgeries and subsequently examined her, reside there or nearby. Third, neither party has any particular connection to the District beyond Defendant's general business here. Fourth, the District has no interest in the adjudication of the dispute. In addition, the case could have originally been brought in NDNY since Defendant's supplying of the pain pump there allegedly caused the injury. Justice thus favors a transfer.

Plaintiff nonetheless argues that transfer is not in the interest of justice because the statute of limitations in New York may bar her action there. On the contrary, she would not be prejudiced in regard to the statute of limitations by a transfer because the Second Circuit has held that "when a case is transferred for convenience under 28 U.S.C. § 1404(a), the law of the transferor state is to be applied so long as the transferor state could properly have exercised jurisdiction." Gerena v. Korb, 617 F.3d 197, 204 (2d Cir. 2010) (citations omitted). Since

personal jurisdiction, at least at this time, does exist, D.C.'s statute of limitations would apply. In the event that an NDNY court determines otherwise, Plaintiff would still not be prejudiced because this Court then could not have retained her case and would have had to dismiss it or transfer it under § 1406(a).

### IV. Conclusion

The Court, therefore, will issue a contemporaneous Order transferring the case to the Northern District of New York.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: Apr. 20, 2012